Report oe Majority of Committee.
In Assembly, February 19th, 1852.
Mr. Sheldon, from the committee on privileges and elections, to which was referred the petition of Russell Smith, claiming the seat held by Ephraim L. Snow as member of Assembly of the Sixteenth Assembly District of the city .and county of New York, reported in writing.
Report of the Majority AND Minority of the Committee oh Privileges AND Elections on the Petition of Russell Smith, Claiming the Seat now held by Ephraim L. Snow. .
Mr. Sheldon, from the majority of the committee on privileges and elections, to which was referred the petition of Russell Smith, claiming the seat held by Ephraim L. Snow, .as member of the Assembly from the sixteenth Assembly district of the city and county of New York, respectfully reports:
That by the return of the county canvassers Ephraim L. Snow was elected a member of Assembly from the sixteenth Assembly district of the city and county of New York, by a majority of three, votes over Russell Smith, the.petitioner. Mr. Smith claims that irregu *259 larities existed in the proceedings of tbe board of inspectors of election in tbe sixteenth Assembly distinct, which if corrected would give him a majority over Mr. Snow.
By mutual agreement' the ■ parties submitted the following 'as the whole evidence of the case:
A certified copy of the poll list of the fourth election district:
A certified copy of the statement and return of the votes of the fourth election district, and a tabular statement of the votes given in each district.
An affidavit made by W. Ii. Pearsall:
A certified copy of twelve affidavits made by the following persons:
Por Mr. Smith, John Stephenson, Edward C. Graham, Amos Hatfield, Thomas Oonateu, James Johnston, E. Fitch Smith, Patrick O’Keefe.
For Mr. Snow, Sidney Ii. Stewart, John Paxton, Elisha 0. Jones, Charles Mann.
The affidavits accompany this report, and are marked “A.” Also the tabular statement of the votes given in each election district, marked “ B.”
As the evidence is presented Mr. Smith relies upon four points:
1. The inspectors of the fourth election district committed such errors that the vote of that district should be rejected.
2. If the vote of that district is not rejected, two votes given for Mr. Smith which were drawn from, the ballot-box and destroyed as excess of ballots by the inspectors, should be counted.
8. Two votes should be allowed which were destroyed as a double ballot.
4. One vote given to the inspectors by Pratick O’Keefe, but not put into the ballot-box, should be counted for Mr. Smith.
It is not claimed by Mr. Smith that the alleged irregularity in second election district can vary the result in his favor.
The affidavit of W. IT. Pearsall contains all the evidence in relation to the second election district.
One of the affidavits of Thomas Conaten and the affidavits of Smith and O’Keefe, contain the evidence relating to the O’Keefe vote.
The remaining nine affidavits contain the evidence relating to the proceedings of the board of inspectors of election of the fourth district while canvassing the votes.
The affidavits except the affidavit of ~W. H. Pearsall, were prepared in November last, and were used at a hearing of the case *260 before tbe board of county canvassers of the city and county of Hew York.
By the certified copy of the statement of the votes given in the fourth election district, it does not appear that any ballots were attached to the returns, or that any returns were made by the inspectors of the scattering votes given for member of Assembly in that district.
By the certified copy of the poll list of the fourth election district, there appears .to be six hundred and eighteen votes marked in the Assembly column.
By reason of the conflicting and indefinite character of the evidence presented, the committee have unfortunately been unable to agree in a report.
The undersigned of the committee have made the following examination of the case, which is submitted for your consideration:
The first point presented by Mr. Smith is, that all the votes of the fourth election district should be rejected, on the following grounds:
1. Fraud on the part of one of the inspectors while drawing an excess of two ballots from the box.
2. The inspectors did not attach to the returns one ballot of each kind cast at the election, and did not make a return of the scattering votes given for member of Assembly.
'The evidence relied upon to show fraud in the drawing of the two ballots is contained in the affidavits of Conaten and Johnston.
It sets forth in substance that the ballots given for Mr. Snow were about double the size of those given for Mr. Smith ; that after they were opened they were returned into the box, and Charles Mason, one of the inspectors, was chosen to draw two ballots, as there was an excess of ballots over the names on the poll lists ; that Mason in drawing did not draw the first ballot he touched, but moved his hand about in the box, and each time drew one of Smith’s votes; that the chairman of the board remarked to him while drawing, not to finger the ballots but to draw; that a few minutes after this one of the inspectors asked him how lie came to draw two Smith tickets; he replied it could not be expected he would draw two whig tickets.
This evidence is contradicted in the affidavits of Paxton, Jones and Mason. Jones states that he saw and heard nothing on the part of the canvassers, clerks, or any citizen present, in any degree *261 indicating the practice of fraud or unfairness, nor heard any expression of dissatisfaction in regard to the proceeding’s of the inspectors; that he witnessed the drawing of the two ballots, and discovered nothing like dishonesty, and heard no expression of any suspicion of unfairness.
The inspector, Mason, denies the practice of fraud, and denies that any person said to him not to finger the tickets. He admits that when he was asked how he came to draw two Smith tickets, that he in a sportive manner made a similar reply to the one stated by Con aten.
The members of the committee all agreed that there was not sufficient evidence to establish fraud in drawing the two tickets, and likewise agreed in opinion that the irregularities of-the inspectors in not attaching the ballots -to the returns, and in not making a return of the scattering votes, did not make the election void or authorize tiie rejection of the vote of the whole district.
Mr. Smith’s second point is, that the two ballots drawn from the box as excess of ballots, were improperly destroyed for the following reason :
1. There was only an excess of one ballot.
2. The two votes were not drawn until after the ballots were opened .and separated.
By the copy of the poll list there appears to be six hundred and eighteen votes designated in the Assembly column; and by the affidavit of Johnston, there were six.hundred and nineteen ballots, not counting two votes destroyed as a double ballot; but Johnston also states that the ballots exceeded the number on the poll list by two ; that there was an excess of two is sworn to by five of Mr. Smith’s witnesses and two of Mr. Snow’s, and contradicted by none. If the copy of the poll list is taken as the best evidence of the number of votes which were in the Assembly column, it is more reasonable to suppose that Johnston was mistaken as to the number of ballots than to believe that he was mistaken as to the number of excess; and that six other witnesses were also mistaken as to the number of excess, including the two clerks and two of the inspectors.
It is believed then, that there was an excess of two votes. As to the drawing of the excess, it appears from the evidence that the inspectors in canvassing the votes, first counted the ballots, and it was found that the ballots exceeded the poll lists, but that the poll lists did not agree. Tliat while the clerks were correcting the lists, *262 the inspectors proceeded to' open the ballots; that after the poll lists were corrected and the ballots opened, the ballots exceeded the poll lists by two (not including the two votes which were claimed to be a double ballot), that thereupon the ballots were returned into the box, and the two votes drawn out.
The statute (section 39, article 4, Revised Statutes), provides that “ if the ballots shall be found to exceed in number the wliole number of votes on the corresponding columns of the poll lists they shall be replaced in the box and one of the inspectors shall, without seeing the same, publicly draw out and destroy so many ballots unopened as shall be equal to such excess.”
The forty-first section of the same statute, is as follows:
“If after having opened or canvassed the ballots it shall be found that the whole number of them exceeds the whole number of voters entered on the poll lists, the inspectors shall return all the ballots into the box, and shall thoroughly mingle the same, and one of the inspectors, to be designated by the board, shall publicly draw out of such box, without seeing the ballots contained therein, so many of such ballots as shall be equal to the excess which shall be forthwith destroyed.”
The poll lists should have been corrected and the excess of ballots drawn before the ballots were opened. Although the excess of ballots should have been drawn before the same were opened, the under signed of the committee are clearly of the opinion that it was the duty of the inspectors upon discovering their neglect to return the ballots into the ballot-box and thoroughly mingle the same, as the inspectors did do, and draw therefrom the actual excess, and that such drawing is required by the last section above referred to, and would be valid.
The third point which the contestant makes is, that two of his votes were destroyed as a double ballot which he claims were single votes accidentally slipped together in the ballot-box.
The only question arising upon this point is that the votes destroyed have the appearance of having been voted together.
The evidence relating do it is as follows:
Stephenson’s affidavit says : “ among the ballots were found two for Russell Smith slipped together which were interlocked and not folded together as this deponent verily believes.”
Graham says he has read Stephenson’s affidavit and the same is true.
*263 Hatfield says : “among the ballots were found two ballots for Rns-sell Smith slipped together.”
Oonaten, one of the inspectors, says that while they were canvassing, the chairman of the board, a Mr. Earn ham, destroyed two ballots given for Mr. Smith; that he did it suddenly without giving the other inspectors an opportunity to examine and see whether they were single ballots or a double ballot.
Johnston says: “ the inspectors destroyed two ballots given for Russell Smith alleging that they constituted a double ballot.”
Stuart says : “a double ballot was destroyed.” Mr. Jones calls it a double ballot. Mr. Paxton, one of the clerks, says that the affidavit of Mason is time.
Mr. Mason, the inspector, states in regard to the double ballot, as follows: “ The said double ballot was not destroyed by the chairman of the inspectors as stated-by Oonaten, without the consent of the deponent and himself, and without giving them time and an oppor tunity to examine it; deponent says that the double ballot was a matter of special consideration by all three of the inspectors; - that he and the said Ooriaten, conferred together with respect to the said ballot, and on inspecting it at once agreed that it was a .double ballot ; said Oonaten' himself found said ballot among the other ballots, and as soon as found and inspected pronounced it a double ballot, and handed it to the chairman; it was kept and subsequently more than an hour afterwards thoroughly examined by the board and unanimously declared to be a double ballot, and the chairman of the inspectors (Mr. Farnham) directed to destroy it, who did so; deponent says that from the fold and general appearance of the ticket, it was perfectly evident that two single tickets had been folded together before they had been voted, and that they could not have accidentally become interlocked in the ballot-box in the folds combining, the tickets being of such a character as to leave no doubt that they had been folded together before they were voted. “ They were not at any time separated or taken apart, but were destroyed in the same fold they were found.”
This constitutes •filie whole evidence relating to the double ballot.
The three witnesses who swear they believe it to have been two votes slipped together, do not give a reason for their belief, do not even state that they ever saw the ballot, or had an opportunity of inspecting it. Oonaten, who swears that it was suddenly destroyed, does not say but what he believed it to have been a double ballot, *264 and Mason states, which, is not denied, that Conaten himself found the ballot and handed it to the chairman as a double ballot. ISTot one of the inspectors or the clerks state that they believe it to have been - any thing but a double ballot. Two of the inspectors, if not all three, called it a double ballot and consented to its being destroyed as such.
The majority of your committee have been unable to see in the case sufficient evidence to convince them that this ballot was two singte votes accidentally slipped together in the ballot-box.
The fourth point is, that the vote of Patrick O’Keefe was not, put into the ballot-box.
The evidence shows that Patrick O’Keefe delivered a vote for Mr. Smith, with other votes to the inspectors; that his name was given and the ballots distributed ; the inspectors did not put them into the box. No explanation is given, except that Oonaten states that he consented to their being put away, as he was under the impression that O’Keefe should have stayed until his votes were put into -the box.
The evidence is uncertain. There is no proof that there was an excuse for putting away the votes, or that there was not a reason for it.
If a person should appear at the board and give-his votes and name to the inspectors, and should then leave before the inspectors had put the votes.into the ballot-boxes, and before they had had an opportunity of inquiring as to the qualifications of the person offering to vote, it certainly would be their duty to reject the votes which they had received.
It appears that O’Keefe remained at least, but a very short time at the polls, not long enough to have the inspectors decide to put his vote into the box; he might have left abruptly.
The undersigned of your committee are therefore of the opinion that it should not be presumed that there was no excuse for putting aside the voté of O’Keefe; it should hep/roved there was none, before allowing a vote which had never been deposited in the ballot-box, or canvassed, or returned as a vote.
This brings us to the irregularity of the second election district; all the evidence in regard to it is contained in the affidavit of W. IT. Pearsall. It sets forth that the inspectors in canvassing the votes found six double ballots for Mr. Smith, and one for Mr. Snow ; that the whole number of ballots, including the double ballots, exceeded the poll list by three; that the inspectors destroyed three of the *265 double ballots for Smith, and counted the remaining four double ballots; also that two Assembly ballots for Mr. Smith, were found in the charter box, which were destroyed. It is believed by the majority of the committee that all of the double ballots should have been destroyed. • ”
The thirty-sev.enth section of the statute, before referred to, requires that “if two or more ballots shall be found so folded together as to present the appearance of a single ballot they shall be destroyed if the whole number of ballots exceed the whole number of voters and not otherwise.”
It is claimed for Mr. Smith that only three of the double ballots should have been destroyed. The answer to this is that the statute requires the whole to be destroyed as much as one. "When there are several double ballots it makes no provision for selecting a part to be destroyed, and for counting the remainder. "When there is more than one double ballot, and there is an excess of votes, all of the double ballots must share the same fate.
When two or more ballots are found together as one, they are counted only on the supposition that they slipped together in the ballot-box; if to separate and count them would make the votes exceed the poll lists, that supposition is destroyed.
It is claimed that the four double ballots were counted as one vote each. There is no evidence that they were counted in that way ; if it is proper to count a double ballot, certainly all the votes of which it is composed should be counted; there is no provision for counting half of a double ballot aiid destroying the other half.-
If the four double ballots were counted as one vote each, Mr. Smith gained two votes by the irregularity; if the votes were separated and counted he gained four.
Tt is claimed by Mr. Smith that if all the double ballots should have been destroyed that would have permitted a counting pf the Assembly votes found in the charter box.
It is believed that this view cannot be sustained. The thirty-eighth section of the statute before referred to, isas follows: “No ballot, properly indorsed, found in a box different from that designated by its indorsement, shall be rejected, but shall be counted in the same manner as if found in the box designated by its indorsement, provided that by the counting of such ballot or ballots, it shall not produce an excess of votes over the number of votes as designated in the poll list.”
*266 From this it appears if the votes found in the Assembly box bad been less than-the number upon the poll list, it would have been proper to have counted the Assembly votes found in the charter box; but an excess was already found in the Assembly box. Can there be any reason in the position that when the votes found in a proper box equal or exceed the poll lists, that the destruction of some by reason of their being double or defective, will authorize the counting of votes found in the wrong box ?
Ballots found in an improper box when counted, or counted on the supposition that the inspector placed them there by mistake; if the votes in the proper box are found to be less than the number found upon the poll list, the statute holds it good evidence that' the mistake has been made; blit if the votes- found in the proper box equal or exceed the number on the poll list, the evidence fails, and it will be presumed that they found their way into the wrong box by the electors voting two votes of a kind, or by being secreted accidentally or otherwise in a vote belonging in the box where they were found.
The majority of your committee are, therefore, of the opinion that from the evidence, Mr. Snow lost four votes by the irregularity in the second election district which should be allowed him, and admitting that the double ballots were counted as one vote each, which admission the evidence does not justify, Mr. Snow then lost two votes.
There are in this case incidental points which have not been referred to. Most of these arise out of conflicting statements in the affidavits. Some of them may have a bearing upon the main question presented.
It may be proper to notice in connection with the drawing of the two ballots, in the'fourth election district, that it is claimed that thq scattering ballots were not returned into the bo? at the time of draw, ing the excess of ballots., If they were not returned, it cannot be seen that it gave either of the contestants an advantage over the other.
The majority of the committee are of opinion, that the weight of evidence is strongly in favor of the conclusion, that all the ballots were returned. Two witnesses state that they were not returned; three state they were returned; two of them swear to a direct recollection of the fact, and give reasons for recollecting it.
During the investigation of this case, some stress has been laid upon the fact, that Mr. Smith received a greater number of votes than *267 .TVIr. Snow. If be received a greater number of votes than Mr. Snow, winch could be counted and allowed to him under the rules and regulations of the election law, he certainly should be declared elected. If anything more than this is claimed, it is regarded as a very dangerous doctrine. It has been said that the evidence in regard to the six double ballots was introduced for the purpose of showing that Mr. Smith was the choice of a majority of the electors of his district.
If these ballots should have been destroyed as double ballots, the fact that they existed should not be used as-evidence for any purpose whatever, and more particularly should not be used to improperly influence the minds of those who are to decide each of the legitimate . points in this case upon the evidence, and upon the rules and principles of law applicable to it.
The question has not been how many votes were actually cast for either' party ? but how many will remain for each, after a legal canvass ?
The two votes drawn from the ballot-box in the fourth election district,.and the double ballot as two votes, must be counted for Mr. Smith; and the irregularity in the second district must be disregarded or Mr. Smith is not elected. The undersigned of the committee caunot see how either of these things can be done without disregarding plain and well settled rules of evidence, and violating the law regulating the canvassing of votes.
It is recommended that the following resolutions be adopted:
Resolved, That the prayer of the petitioner be denied.
Resolved, That Ephraim L. Snow is a member of Assembly, duly elected from the sixteenth Assembly district of the city and county of New York.
A. SHELDON.
A. E. RICHMOND.
H. B. BULL.
Assembly Documents, 1852, No. 46. (See affidavit accompanying report.)
Report or MiNObity of Committee.
Mr. Keyes, from the minority of said committee, also reported the , following:
*268 MINORITY REPORT OF TI-IE COMMITTEE ON PRIVILEGES AND ELECTIONS, on tite Petition of Russell Smith, Claiming a Seat as a Member of the Assembly, from the Sixteenth Assembly District of the City and County of Mew York.
The committee on privileges and elections, to which was referred the petition of Russell Smith, claiming a seat in the Assembly, as member from the sixteenth Assembly district, of the city and county of Mew York, now held by Ephraim L. Snow, report that the parties have appeared before your committee in persoji, and by their respective counsel; that they have received such proofs as were offered by the parties, and have heard counsel in their behalf respectively, and that the following facts have been proved before your committee by evidence which is undenied and undisputed.
J. That the petitioner, Russell Smith, received a numerical majority of all the votes cast for member of Assembly in said sixteenth Assembly district, at the general election held therein, on the fourth day of November, 1851.
2. That Russell Smith received in the first, second, third and fifth election districts, in the said Assembly district, seventeen (IT) more votes than were given for Mr. Snow, taking the votes given for Mr. Smith and Mr. Snow respectively, which were allowed and certified to them respectively, by the returns of the election held in such districts, certified by the several inspectors thereof, and that in the second election district, Mr. Smith received five more votes than were allowed to him; three of which were destroyed, on the ground that they were double ballots, and that the whole number of ballots exceeded the number of votes recorded upon the poll lists, and the remaining two were also destroyed on the ground that they were found in a box other than the Assembly box, and that the whole number of ballots exceeded the number of votes found recorded upon the poll list.
3. That Russell Smith had in the ballot-box of the fourth election district in said Assembly district, at the closing of the polls, two hundred and ninety-five votes-, and that Ephraim L. Snow had in the same box at the same time, three hundred and eleven votes ; that if Mr. Smith be not legally and fairly deprived of any of the votes given for him and found in said ballot-box, he was duly elected a member of this House, to represent said sixteenth Assembly district, by a majority of one vote over Mr. Snow.
4. That Patrick O’Keefe, a legal voter of said fourth election dis- *269 fcrict, attended tlie election held therein, on the fourth day of November last, and voted for said Russell Smith for member of Assembly ; that his vote was not challenged or questioned in any manner, and his ballot for said Smith was received by said inspectors of election, together with other ballots presented and voted by him, and was declared by said inspectors to be a full vote given thereat, by said Patrick O’Keefe, and said ballots were distributed by said inspectors and placed by them upon the proper boxes to be deposited therein, that said P. O’Keefe, having accomplished his purpose of voting at said election, thereupon left the polls whilst the ballots so given by him were lying upon the appropriate ballot-boxes; that the inspectors then observing that said O’Keefe had left, threw away the ballots so voted by him, and did not put them in the ballot-boxes, on the supposition on the part of the inspectors that it was necessary for such elector to remain after giving his vote until the inspectors had deposited such vote in the ballot-boxes.
5. That after the poll of the election held in said fourth election district had finally closed, the inspectors did not commence the canvass by a comparison of the poll list from the commencement, and a correction of any mistakes found therein, as required by section thirty-six of the election law; on the contrary, tire inspectors proceeded to count the ballots contained in the Assembly ballot-box, and after counting the same, found that there were three ballots in excess of the poll list of one of the clerks, and four ballots in excess of the poll list kept by the other clerk. That the inspectors did not then proceed to compare the poll lists, and to correct any mistakes therein, nor did they, upon finding that the ballots exceeded the whole number of votes upon either of the poll lists, replace the said ballots in the box unopened, and draw out and destroy so many ballots unopened as should be equal to such excess, as required by section thirty-nine of the election law ; on the contrary, the said inspectors proceeded to open, and. read and canvass the ballots, and after they had opened, and read and canvassed the said ballots, and ascertained that the whole number of ballots exceeded the whole number of votes recorded on the poll list, they directed the clerks for the first time, to examine and correct the poll list. This course was protested against at the time.
6. That after comparing the poll lists and making them to agree, the aggregate number of votes recorded thereon was reported at six hundred and seventeen for member of Assembly, and the num *270 ber of ballots for said office was reported to be six hundred,, and nineteen. That the tickets which had been canvassed for Mr. Smith and Mr. Snow were then put back into the ballot-box, and one of the inspectors was directed to draw therefrom two ballots to reduce the number of ballots to the number of votes recorded on the poll list. That the ballots voted at said election for Mr. Snow, were uniform in size, and were nearly double the size of those voted for Mr. Smith, which were also uniform in size; that they were about an inch longer, and printed upon much thicker paper, so that a person who had opened and read the ballots for Mr. Snow and Mr. Smith, could readily distinguish, by his sense of touch, without looking at the same, those given for Mr. Smith from those given for Mr. Snow. Two ballots given for Mr. Smith were drawn out of said box by the said inspector, and were then destroyed and not counted ; the length of time that was occupied by the inspector who made the draft, after he commenced and before he drew 'out the ballot, was remarked upon at the time. The state of facts which have a bearing on the question of the fairness of this drawing will be hereinafter stated
7. Two ballots found in said box given for Bussell Smith were destroyed by the inspectors, on the allegation that they were a double ballot; the evidence bearing upon this question will be hereinafter stated.
8. It appears by an accurate footing up of the poll list of said fourth district, as corrected and produced before the committee, that the number of votes recorded therein is six hundred and eighteen (618) instead of 617 as, was supposed by the inspectors, and that by their error in this respect they drew out one ballot too many from the ballot-box, and thereby deprived Mr. Smith of one legal vote.
It also appears from the returns of said inspectors and the poll list that the whole number of votes given was greater than the aggregate number of votes certified by them to have been given by sixteen votes; the evidence before the committee shows that votes were given in said district for ¥m. D. Green and others, but how many were given for Green, and who the others were who were voted for, and whether the other tickets so found were properly indorsed to designate another ballot-box, does no appear; and no evidence upon either of these questions has been produced to the committee. The committee, therefore, have no means of determining whether or not, the whole number of Assembly tickets proper did actually exceed the *271 number of votes recorded on- tlie poll list, and if they did not, Mr. Smith was evidently both illegally and unjustly deprived of the two ballots destroyed on the alleged ground that they constituted a double ballot, and also of the two ballots drawn from the ballot-box.
9. On the question whether the ballots of Mr. Smith were destroyed, upon the allegation that they formed a double ballot, the evidence of three witnesses has been produced on his part, showing that these two ballots were slipped together and were interlocked, and that they did not form a double ballot; one of the inspectors swears expressly, that these ballots were destroyed hastily and without his consent, and without his having an opportunity to examine them, and that he protested against it; the fact that this inspector made a protest against it is proved by a witness on the part of Mr. Snow; one of the clerks and one of the inspectors swear that these ballots were destroyed before the poll list were fully compared by the clerks; one of the inspectors alleges that the ballots were destroyed, after they had been examined by all of the inspectors and by their consent, and that this destruction was made after the poll list had been compared, and that the ballots destroyed formed a double ballot. The inspector who attests the fact is the same who made the draft of the ballots from the box having thereon the name of Mr. Smith, and whose fairness is strongly drawn in question by the uncontradicted and reliable testimony before the committee.
10. When the ballots were replaced in the box to draw out and destroy the excess, one clerk and one inspector swear that the ballots given for Wm. D. Green, and others, were not put in the box. A bystander has testified that all the ballots upon the table were put back, but he doe,s not swear that the scattering ballots were lying upon the table. One inspector (Mason) swears according to his recollection and belief that they were put back.
11. At the time of the proceeding in the fourth election district, the result of 'the election for member of Assembly in the other districts and the majority for Mr. Smith therein was known to the canvassers.
12. The occupant of the seat from the said sixteenth district raised a question whether the votes allowed to Mr. Smith and Mr. Snow out of the double, ballots in the second district should not be rejected. The counsel for Mr. Snow admitted before the committee that he had no doubt but that only a single ballot from each of the double ballots was allowed. The affidavit in relation to this district was introduced only for the purpose of showing that Mr. Smith received a *272 larger majority of the votes of tlie qualified voters than he claimed to have allowed to him as necessary to secure his election. The present election law does not appear to contemplate or authorize the destruction of any double ballots, except in a case where the number of ballots shall exceed the number of votes recorded upon the poll list and then, only the excess. If the allowance of such votes was an error in judgment on the part of the inspectors'in the second district, it would not authorize the setting aside of the whole returns from that district, because the precise extent of that error is ascertained, and may be corrected. Changing the votes, as is claimed by Mr. Snow the committee should do, would deprive Mr. Smith of three votes and Mr. Snow of one vote ; by making that change, the .number of votes counted would be less than the number of votes given, as shown by the poll list, and Mr. Smith was then entitled to the two votes given for him for member of Assembly, which were found in the charter box properly indorsed “Assembly.” Adding these to his vote and taking from him three votes, and from Mr. Snow one vote allowed from the double ballots, and the result of the election in the second district will remain as it was returned, so far as it respects the'.rights of the parties to the seat in question.
Upon the conceded facts, and upon this state of the evidence in regard to the disputed' facts, the question has been submitted to the committee, whether the petitioner is not legally entitled to the seat in this House now 'occupied by Mr. Snow; the committee have regarded the question as an important one, not only with reference to the obligation resting upon them to give effect to the clearly expressed choice of the electors, but also in regard to the observance of the forms prescribed by law to ascertain and "preserve the evidences of the will of the electors, and which are intimately connected with the preservation of the elective franchise.
The term election, as used in our statutes, means the act of choosing a person to execute the duties of a particular office, performed by electors who are duly qualified and in the manner prescribed by the Constitution and laws; it cannot be questioned, that duties prescribed by law to be performed by inspectors of election, are mainly ministerial, and that votes fairly and honestly given ought not to be set aside for any omission or mistake of the returning officers. But a different question arises where it appears that votes actually given have been destroyed or excluded from the canvass, by the officers.
The party in whose favor a ballot has been found to have been *273 actually given has a legal right to have that ballot counted and returned for him, unless those who dispute the right can'show a valid and sufficient reason in law, or in fact, for rejecting it.' In this case Mr. Smith had the numerical majority of all the votes actually found in the ballot-boxes, given for member of Assembly in said sixteenth Assembly district. The burden 'ests upon those who dispute his right to show that he has been legally and fairly deprived of a portion of these votes.
In the present case, so far as it respects the two votes drawn from the ballot-box as an excess over the votes on the poll list, the evidence is conclusive that they were illegally destroyed. The poll list showá’, on an actual footing of the number of votes given, that one too many was drawn out. This might be cured by adding that vote to the number returned for Mr. Smith, but the manner of drawing the other iffite was plainly illegal. After the votes had been canvassed and separated, the mere gathering together of the separate heaps and throwing them back into the ballot-boxes (even if all the votes had been returned) rendered it almost morally certain that the votes drawn would be all for one candidate. It prevented any^ chance for that fair and impartial drawing which the statute requires, and its results accorded with the mode adopted. It is impossible to see what might have been the result if the legal mode had been pursued. Mr. Snow has been returned to this House by a majority of three; giving to Mr. Smith the vote that was destroyed by reason of the mistake in the footing of the poll list, that majority is reduced to two. If the drawing had been in accordance with the. law on that subject, one vote given for Mr. Snow might have been drawn and that for Mr. Smith have been left. Taking one from Mr. Snow’s vote and adding-one to that of Mr. Smith’s would have made a tie between them without having referred to the vote of Mr. O’Keefe, or the alleged double ballot; either of these would have given Mr. Smith a clear majority: As the committee cannot see what would be the result if the law had been complied with, they are constrained to say that Mr. Smith has not been legally deprived of the votes given for him. The omission to put back all the ballots into the box before drawing, which appears to be established by the weight of the testimony, also deprived Mr. Smith of the chance that one of these might have been drawn.
Upon the question whether tire two ballots destroyed constituted a double ballot, the rules of evidence applied to the testimony leave no *274 doubt that Mr. Smith was not legally deprived of these votes. The burden of proving that these constituted a double bailor rests upon Mr. Snow. The fact must be clearly and satisfactorily proved. Without observing further upon the evidence than to remark that the witness who proves it occupies a very questionable position, by his own showing, and is contradicted by four witnesses, and that his associate, to whom he refers, lias given no evidence to sustain him ; the conclusion of fact is that these votes were not a double ballot, nor properly destroyed as such. The right of Mr. Smith to have the vote given by Mr. O’Keefe in his favor, appears to be unquestionable. So Tar as the act of the voter is concerned, he has performed his part when he has deposited his ballot in the hands of the inspectors, and they receive it as such and declare his vote. It is then given, and no neglect or omission of the inspectors to put it in the proper box, or to count it, can annihilate that part. This rule imposes a nece'ssary restraint upon ignorance, and will form an invaluable safeguard against corruption. The perverse motives which too often actuate human conduct are multiplied by a closely contested election, and it is incumbent upon all tribunals who may determine the question, not to add to the powers of ministerial officers to defeat the suffrage of any. voter, or to control the result. Judging of the election in this case, whether by the law regulating the subject or by the exercise of the elective power by the voters, it appears that Mr. Smith has received a majority of all the votes cast for member of Assembly in the said sixteenth district, and has been duly elected a member of this House to represent that district. The committee beg leave to offer the following resolutions:
Resolved, That Ephraim L. Snow is not entitled to a seat in this House as the representative of the sixteenth Assembly district in the city and county of Hew York.
Resolved, That Russell Smith is entitled to a seat in this House as the representative of the sixteenth Assembly district in the city and county of Hew York.
HARVEY KEYES.
THOMPSOH WHITE.
Assembly Documents, 1852, Ho. 46.
Mr. Gushing moved that both of the said reports, together with the testimony, be printed.
Mr. Speaker put the question whether the House would agree to *275 the said motion of Air. Cushing, and it was determined in the affirmative.
Mr. Yan Santvoord mo\;ed that the said’ reports be made the special order for Wednesday next, immediately after receiving petitions, and that Mr. Smith, the contestant, be permitted to appear.^ before the House, and be heard in favor of his claim.
Mr.' Speaker put the question, whether the House would agree to the said motion of Mr. Yan Santvoord, and it was determined in the affirmative.
Assembly Journal, 1852, page 312.
• Hr Assembly, February 26, 1852.
Mr. Smith offered the following asa substitute for the several resolutions offered by the majority and minority of the committee on privileges and elections, to wit: •
Resolved, That Russell Smith has not established his claim, preferred in his petition to a seat in this House, as having been elected in the sixteenth Assembly district of the city and county of New York, and that the prayer of the petitioner be denied.
Mr. Yan Santvoord moved to, amend the substitute, by striking out all after resolved, and insert as follows :
“ That Ephraim L. Snow is not entitled to a seat in this House, as the representative of the sixteenth Assembly district of the city and county of New York.” Said amendment was accepted by Mr. Smith.
Mr. Speaker put the question, whether the House would agree to the substitute of Mr. A. Smith, as amended by Mr. Yán Santvoord, which was decided in the negative. Ayes 55, nays 58.
Prayer of petitioner denied.
Mr. Speaker then put the question on the first resolution, which was in the words following, to wit:
Resolved, That the prayer of the1 petitioner be denied, which was adopted. Ayes 58, nays 57.
Assembly Journal, 1852, pages 343, 344, 345, 346, 348, 349, 350, 351, 352.
Seat IN SixteeNth jt DeclaRed YacaNt.
IN Assembly, Febmary 27, 1852.
Mr. Walsh offered for the consideration of the House, a resolution, in the words following, to wit:
*276 Resolved, That the seat in this House, of member of Assembly from the sixteenth Assembly district, is hereby declared vacant.
Mr. Speaker* put the question, whether, the House would agree to the said' resolution, and it was determined in the affirmative.
Ayes, 52; noes, 13.
A Call oe'the House.
See, for pi’oceeding relative to a call of the House, Assembly Journal, 1852, pages 370'to 381.